[No. 16246-6-II.   Division Two.   August 15, 1994.]

FRANK M. REICHL, ET AL, *Appellants,* v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, *Respondent.*

*Carson F. Eller,* for appellants.
*Richard J. Jensen,* for respondent.

MORGAN, C.J. — Melody E. Reichl[1] appeals a summary judgment in favor of State Farm Mutual Automobile Insurance Company. We affirm.

On May 26, 1989, Reichl was injured in an automobile accident proximately caused by the negligence of Thomas Stetz. By coincidence, both Reichl and Stetz had automobile insurance with State Farm.

Reichl's policy included personal injury protection (PIP), under which State Farm agreed to pay for reasonable medical expenses incurred within 3 years of the accident. This PIP coverage was subject to a clause stating:

> Under personal injury protection and underinsured motor vehicle coverages, we are subrogated to the extent of our payments to the proceeds of any settlement the injured *person* recovers from any party liable for the *bodily injury* or property *damage.*[2]

---

[1]Frank M. Reichl is also a party to the appeal, but his involvement is immaterial to our opinion.

[2]Clerk's Papers, at 222.

However,

> Our right to recover our payments applies only after the *insured* has been fully compensated for the *bodily injury, property damage* or *loss*.[3]

State Farm promised to pay "on a monthly basis within 30 days after we have proof of the amount due",[4] and it reserved the right to have Reichl "examined by physicians chosen and paid by us as often as we reasonably may require".[5]

Between May 26, 1989, and the end of 1991, Reichl accumulated and submitted a variety of bills to State Farm. Some were from physicians, a pharmacy, a hospital and an ambulance company. Those totaled $3,593 and were paid by State Farm. Others included $5,158 for treatment of a temporomandibular joint (TMJ) condition, $1,501 for physical therapy, and $3,330 for psychological treatment related to posttraumatic stress disorder. Those totaled about $10,000 and were not paid by State Farm.

On December 5, 1989, Reichl sued Stetz for negligence. Her complaint sought recovery for medical expenses and other damages, "the exact amount of which will be proven at time of trial".[6]

On September 16, 1991, Reichl v. Stetz went to trial. Several medical professionals testified, and the bills not paid by State Farm were admitted into evidence.[7] The jury was instructed to determine Reichl's total damages,[8] including "[t]he reasonable value of necessary health care, treatment and services received and reasonably certain to be received in the future".[9] The jury returned a verdict for $18,500, and

---

[3]Clerk's Papers, at 222.

[4]Clerk's Papers, at 207.

[5]Clerk's Papers, at 202.

[6]Clerk's Papers, at 45.

[7]By agreement, the parties did not submit the $3,593 in bills already paid by State Farm.

[8]Stetz admitted liability.

[9]Clerk's Papers, at 11.

a judgment for that amount was satisfied on October 17, 1991.

On November 12, 1991, Reichl filed this action against State Farm, alleging that State Farm had breached its insurance contract by not paying her bills, or by paying them late. She also sought treble damages, reasonable attorney fees, and costs under the Consumer Protection Act. State Farm moved for summary judgment, which the trial court granted. Reichl then filed this appeal.

On appeal, Reichl's claim essentially has two parts. In the first part, she says she is entitled to recover the amount of her unpaid accident-related bills, notwithstanding that she has already received the full amount of the Reichl-Stetz judgment. In the second part, she says that even if she cannot recover the amount of her unpaid bills, she is still entitled to recover delay damages suffered when State Farm failed to pay her bills within 30 days of submission.

I

█ Reichl is suing her insurer for benefits allegedly due under her insurance contract. Thus, this is a contract action in which the applicable measure of damages is the benefit of the bargain rule. *Barney v. Safeco Ins. Co. of Am.*, 73 Wn. App. 426, 429, 869 P.2d 1093 (1994).

The parties' bargain is contained in their insurance contract. *Barney*, 73 Wn. App. at 429; *see also* RCW 48.18.520. According to that contract, State Farm will pay Reichl's reasonable medical expenses incurred within 3 years of the date of the accident. Once Reichl has been fully compensated for her loss, however, State Farm is entitled to be reimbursed from, or subrogated to, proceeds paid by the tortfeasor.

Because of the nature of the parties' bargain, the crucial question is whether State Farm presently possesses a right to be reimbursed for any PIP payments it might hereafter be required to make. If it possesses such a right, there is no point in requiring it to make further PIP payments, for it would merely be entitled to recover them immediately after making them.

Reichl makes two arguments designed to show that State Farm lacks a present right of reimbursement. We reject both.

Reichl's first argument is that State Farm lacks a present right of reimbursement because she has not yet been fully compensated for her loss. It is her view that she was undercompensated by the jury in Reichl v. Stetz, and that she will not be fully compensated even if she recovers her unpaid bills in addition to the $18,500 awarded by the jury in Reichl v. Stetz.

This argument was made and rejected in *United Pac. Ins. Co. v. Boyd*, 34 Wn. App. 372, 376, 661 P.2d 987 (1983). In that case, United Pacific paid Boyd about $8,300 for medical expenses and lost wages, under "extended economic loss" coverage. 34 Wn. App. at 373. Boyd sued the tortfeasor, the jury returned a verdict for $14,550, and the verdict was apparently satisfied. United Pacific then sued Boyd to recover its payments, claiming that Boyd had been fully compensated. Boyd resisted, claiming that he had not yet been fully compensated, and that he would not be even if he were to retain the payments previously made by United Pacific. The appellate court ruled:

> The jury determined the money necessary to make Mr. Boyd "whole". The fact Mr. Boyd has placed a greater value on his damages than the jury did does not allow him to relitigate the issue in a subsequent proceeding. We hold [that] Mr. Boyd is collaterally estopped from denying that he was made whole by the jury verdict.

34 Wn. App. at 376.

Here, the jury in Reichl v. Stetz determined Reichl's total damages. As a matter of law, she was fully compensated when the judgment in that case was satisfied. It follows that at all times since, State Farm has had a present right to be reimbursed for PIP payments, as provided in the bargain of the parties.

Reichl next argues that State Farm has no right to be reimbursed because it could not subrogate against Stetz, its own insured. We assume that State Farm could not subrogate

against Stetz because, if it did so, it would breach its promise to indemnify him. State Farm, however, is not attempting to subrogate against Stetz. Rather, it is claiming reimbursement from the proceeds of the Reichl-Stetz judgment. Since October 17, 1991, when the Reichl-Stetz judgment was satisfied by Stetz or someone on his behalf, the proceeds of that judgment have constituted a fund separate from Stetz,[10] and State Farm can subrogate against that fund without breaching its promise to indemnify Stetz.

The cases cited by Reichl do not contradict this reasoning. Most stand for the unsurprising proposition that an insurer cannot subrogate against one whom it has a duty to indemnify. *Moring v. State Farm Mut. Auto. Ins. Co.*, 426 So. 2d 810 (Ala. 1982); *Stetina v. State Farm Mut. Auto. Ins. Co.*, 196 Neb. 441, 243 N.W.2d 341 (1976); *Dupre v. Vidrine*, 261 So. 2d 288 (La. Ct. App.), *writ denied*, 262 La. 312 (1972);[11] *Reeder v. Reeder*, 217 Neb. 120, 127-28, 348 N.W.2d 832, 836 (1984) (quoting *Stetina*, at 451 (quoting *Chenoweth Motor Co. v. Cotton*, 2 Ohio Misc. 123, 124, 207 N.E.2d 412, 413 (1965))). One stands for the proposition that a subrogating insurer cannot recover from a third party against whom its insured could not recover, for its rights are no greater than the rights of its insured. *Rizzuto v. Morris*, 22 Wn. App. 951, 592 P.2d 688, *review denied*, 92 Wn.2d 1021 (1979). These propositions are immaterial in this case.

Concluding this part of our discussion, we hold that State Farm has a present right to be reimbursed for any PIP payments it hereafter might make. The reasons are (1) the parties' insurance contract, which states that State Farm will be entitled to reimbursement once Reichl has been fully

---

[10]This is easiest to see if we suppose that the money needed to satisfy the judgment was paid into the office of the clerk of the court. Even if the money was paid directly to Reichl, however, the effect was still to create a fund separate from Stetz.

[11]Other cases have said that *Dupre* was a case in which "[c]onventional subrogation was not considered", *Norris v. Allstate Ins. Co.*, 293 So. 2d 918, 921 (La. Ct. App.), *writ denied*, 296 So. 2d 832 (La. 1974), or a case in which the insurer was not subrogated to the rights of the insured because it owed the insured two rights but had discharged only one. *Moring*, 426 So. 2d at 813.

compensated for her loss, and (2) the satisfaction of the Reichl-Stetz judgment, which fully compensated Reichl as a matter of law. The trial court did not err in granting summary judgment on this part of Reichl's claim.

## II

The second part of Reichl's claim is for delay damages. She claims such damages based on State Farm's handling of her bills for TMJ, physical therapy, and psychological treatment. With regard to all three types of bills, we limit our discussion to events occurring before October 17, 1991, which was the date on which the Reichl-Stetz judgment was satisfied. For reasons discussed in section I, State Farm was not required to make PIP payments after that date.

We take the physical therapy bills first. State Farm questioned "whether all of the medical bills submitted by plaintiff from Star Physical Therapy related to the subject accident."[12] Thus, on September 22, 1989, it wrote to Reichl's physician asking that he differentiate between injury caused by the auto accident and injury that might have occurred earlier. As far as the record shows, nothing further happened until after the Reichl-Stetz judgment had been satisfied. We agree with the trial court that this evidence is insufficient to support a claim for delay damages.

We take the psychological bills next. On April 16, 1991, State Farm received Reichl's bills for psychological therapy. It promptly asked Reichl's attorney to have Reichl's doctor provide a note explaining how the treatments were related to the accident. As far as the record shows, nothing further happened until after the Reichl-Stetz judgment had been satisfied. We agree with the trial court that this evidence is insufficient to support a claim for delay damages.

Finally, we take the TMJ bills. At all times, State Farm disputed Reichl's claim that a TMJ condition had been caused by the accident. On October 25, 1989, State Farm wrote Reichl indicating that an independent medical exami-

---

[12]Clerk's Papers, at 17. Apparently, State Farm believed that at the time of her accident with Stetz, Reichl was already receiving physical therapy for an earlier injury.

nation (IME) had been scheduled. Objecting to the doctor State Farm had chosen, Reichl declined to attend.

On November 22, 1989, State Farm notified Reichl's attorney that it would not pay TMJ bills "unless we get her in for a second opinion". The attorney said Reichl would eventually submit to an IME for the TMJ condition. According to State Farm's PIP adjuster, however,

> I never heard further from him on when or with whom Ms. Reichl was willing to be examined for a second opinion. I do not believe that I received any further TMJ-related medical bills after that, either.[13]

In February 1990, Reichl submitted to an IME for purposes of Reichl-Stetz litigation. The IME was arranged by the litigation adjuster who was defending Reichl's third party claim against Stetz, and not by the PIP adjuster who was handling Reichl's first party claim against State Farm. Reichl did not tell the PIP adjuster that an IME had been held, and as far as the record shows, she did not ask the litigation adjuster to inform the PIP adjuster of that fact.

On April 16, 1991, the PIP adjuster discovered from reading another doctor's report that an IME had been held. Three days later, she asked Reichl to forward a copy of the report, saying that once the report was received, "consideration of payment can be made".[14] As far as the record shows, Reichl did not send a copy of the requested report before the Reichl-Stetz judgment was satisfied,[15] nor did she ask that the litigation adjuster provide the PIP adjuster with a copy of the requested report. We agree with the trial court that these facts are insufficient to support a claim for delay damages.

---

[13]Clerk's Papers, at 13.

[14]Clerk's Papers, at 40.

[15]The record shows that Reichl sent the IME doctor's handwritten notes to the PIP adjuster on May 28, 1991, but State Farm requested a copy of the complete report. In a brief submitted to the trial court, Reichl asserted that the "report came in on August 23, 1991". According to the record, however, the report was received in the office of her attorney on that date. Nothing shows when, if ever, the report was sent to the PIP adjuster at State Farm.

460

In conclusion, Reichl's right to receive PIP payments was exhausted when the Reichl-Stetz judgment was fully satisfied, and the record is insufficient to support a claim for delay damages. As a result, the trial court did not err in granting summary judgment to State Farm.

Affirmed.

ALEXANDER and SEINFELD, JJ., concur.